# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BRADLEY<br>921 Maple Street<br>Williamsburg, PA 16693 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No. _____ |
| v. | : <br> : | |
| S.C. BOYS, INC., CHAMPS<br>DOWNDOWN<br>139 S. Allen Street<br>State College, PA 16081<br>and<br>SCOTT LUCCESI<br>139 S. Allen Street<br>State College, PA 16081<br>and<br>THOMAS WALKER<br>139 S. Allen Street<br>State College, PA 16081 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### I. INTRODUCTION

1. This action has been initiated by Joshua Bradley (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq.*). Plaintiff asserts herein that he was not paid overtime compensation in accordance with the FLSA (as well as state law(s)) and that he was terminated unlawfully for protective activities under the FLSA. As a direct consequence of Defendants' actions, Plaintiff seeks damages as set forth herein.

## II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. There is supplemental jurisdiction over Plaintiff's state-law claims herein because they arise out of the same common nucleus of operative facts as Plaintiff's federal claim(s) set forth in this lawsuit.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III. PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant S.C. Boys, Inc., d/b/a Champs Sports Bar or Champs Downtown (hereinafter referred to as "Defendant Champs") is a Pennsylvania-based, domestic profit company. Defendant Champs is a privately held company generating in excess of $500,000.00 in gross revenue per year (clearly qualifying as an enterprise under the FLSA).

8. Scott Luccesi (hereinafter "Defendant SL") and Thomas Walker (hereinafter "Defendant TW") are both executives, high-level manages, and owners of Defendant Champs. They also own multiple other locations of Champs, which are the same enterprise.[1]

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV. **FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendants in or about early October of 2015; and in total, Plaintiff was employed with Defendants for approximately 4.5 years.

12. Plaintiff directly worked under individual owners and high-level managers who directed his work throughout his tenure, and those individuals were Defendants SL and TW. These owner-operators directed Plaintiff, controlled and made all decisions about or concerning his compensation, and executed all decisions concerning Plaintiff's terms and conditions of employment (including his ultimate termination from employment, discussed *infra*).

13. Defendants SL and TW own and operate numerous locations, doing business at "Champs Sports Bar(s)" throughout central Pennsylvania. They transfer employees, oversee the

---

[1] During the course of discovery, Plaintiff will likely move to amend the instant lawsuit to identify the proper corporate designations of each other location as a single, joint and/or integrated enterprise and employer. During Plaintiff's tenure, he worked at multiple locations, Defendants freely transferred employees as needed amongst locations, and overlapping management, resources, and advertising are used to operate the joint enterprise.

3

locations through overlapping management and resources, and Plaintiff himself had previously worked at several of the locations (at least 3 in total). They are in all respects a joint enterprise.[2]

14. For Plaintiff's last approximate 3 years of employment, he physically worked for Defendants at 139 S. Allen Street, State College, PA 16081 (doing business publicly as "Champs").

15. Plaintiff was terminated by Defendants SL and TW on or about February 9, 2020 without any prior progressive discipline, notice or warning.

16. Prior to Plaintiff's abrupt termination from employment without prior notice, Plaintiff was labeled or titled "Kitchen Manager" by Defendants for approximately 8 months predating his separation from employment. Before being given the title of "Kitchen Manager," Plaintiff was referred to in varying roles such as cook, chef, supervisor, or assistant manager.

17. Regardless of the iterations of Plaintiff's job title(s), Plaintiff was *always* paid a salary, and his most recent salary (pre-termination) was $60,000.00. As a salaried employee, Defendants *never* paid Plaintiff overtime compensation **or** at a legally-mandated rate of 1.5 times his 40-hour base rate per week.

18. In the timeframe in which Plaintiff was *titled* "Kitchen Manager" (his last approximate 8 months of employment), he *never* could have plausibly met any exemption under state or federal overtime laws.[3] In particular, during this timeframe:

---

[2] As referenced in the Parties section, Plaintiff will seek information relating to the proper names of each such location for corporate identify purposes to amend to the instant lawsuit.

[3] Under overtime regulations, how an employer chooses to "title" an employee has no significant relevance to an actual overtime-entitlement or exemption analysis. *See also* "29 C.F.R. § 541.2 Job titles insufficient," stating:

> A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary **and duties meet the requirements of the regulations in this part**.

4

 (a) Plaintiff worked an average of 60-90 hours per week without receipt of overtime compensation;

 (b) Plaintiff worked exclusively in Defendants' kitchen (or what is commonly referred to as "back-of-the-house" in a restaurant);

 (c) Plaintiff worked from approximately 9 AM to 5 PM primarily without any other kitchen help, prepping food materials, cutting vegetables and other food products, cooking, and <u>other labor</u> associated with providing food to patrons (and on rarer occasions, had 1 other cook helper during this timeframe);

 (d) Plaintiff worked nights wherein 1-4 other cooks joined the kitchen after 5 PM to help with bar / restaurant crowds; but even during this timeframe, Plaintiff consistently cooked, cleaned, prepped food, handled food-service orders, and engaged in food-production labor; and

 (e) Plaintiff's entire job, day in and day out, was cooking, sanitizing and cleaning, and running around the kitchen <u>performing labor</u>.

 19. Salary or non-salary does not dictate entitlement to overtime. To be exempt from overtime as an executive, an employee must meet the "executive exemption," which mandates that the high-level manager regularly direct 2 or more employees, have the authority to hire and fire employees, and perform the "primary duty" of management <u>as opposed to daily labor</u>. *See* 29 C.F.R. 541.100. Per Section 541.100, Plaintiff's primary duties had to be that of "management of the enterprise" for him to be exempt from overtime.

 20. Plaintiff <u>did not</u> customarily supervise 2 or more employees during the majority of each working shift(s), and Plaintiff:

 (a) Did not have any authority to terminate employees;

 (b) Did not perform performance evaluations for any employees;

 (c) Did not have authority to give any pay raises to employees; and

 (d) Did not have authority to discipline, demote, or punish employees beyond giving information to Defendants about his frustration at times with various employees, letting Defendants decide on whether disciplinary action would be imposed (wherein they often did nothing to address Plaintiff's concerns).

5

21. Plaintiff occasionally was permitted to order food or supplies (only during his last 8 months), which was also subject to the discretion, change, review and/or modification by Defendants. In sum, 100% of Plaintiff's daily primary duties consisted of him performing physical labor. He did not: (a) participate in policy making; (b) company-wide or location-wide decision-making; (c) fiscal decisions; or (d) any other facet of management within Defendants. And primary duties were certainly not management of the enterprise.

22. At most, Plaintiff assisted with giving periodic guidance to some other cooks who overlapped small portions of Plaintiff's daily work shifts while Plaintiff *remained continually performing physical labor.*[4]

23. In these similar circumstances, employers such as Defendants often violate state and federal overtime laws by giving labor-performing employees more glorious titles despite that they perform primarily non-management work.[5]

24. Within the 2 months leading up to Plaintiff's termination from employment, Plaintiff spoke with both Defendants SL and TW, explaining he felt he was supposed to receive overtime compensation, checked into the laws himself, and requested printouts of all hours he

---

[4] *See e.g.* 29 CFR 541.115 (explaining construction supervisors, labor supervisors, and other managers who merely perform labor alongside their subordinate employees are not managing an enterprise and are entitled to overtime compensation).

[5] *See e.g. Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008)(affirming $35,000,000 verdict against the defendant because a class of store managers performed primary duties of non-management including stocking, cashier work, etc…); *Hickton v. Enter. Rent-A-Car Co. (In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.)*, 2012 U.S. Dist. LEXIS 136252 (W.D. Pa. 2012)(denying summary judgment and explaining a jury could readily conclude employee titled "manager" who performed mostly sales and other labor had "primary duties" other than management); *Marshall v. Coastal Group Management*, 1980 U.S. Dist. LEXIS 11704 (D.N.J. 1980)(reaffirming the denial of summary judgment as to managers explaining they spent most of their time prepping food, cooking, handling customers, working the cash register and cleaning finding assertions of the "executive exemption" to be "untenable"); *Roberts v. Nat'l Autotech, Inc.*, 192 F. Supp. 2d 672, 675 (N.D. Tex. 2002)(granting summary judgment to the plaintiff, a store manager, because the *majority* if his time was spent doing non-exempt types of job duties making the managerial or administrative exemptions inapplicable under the FLSA).

worked in the prior months and years. Plaintiff's concerns of non-payment of overtime compensation were federally-protected legal concerns he lodged.

25. On February 9, 2020, Plaintiff was blindsided with a termination wherein Defendants SL and TW informed him that they were moving in a different direction wanting a different person in Plaintiff's role with different skills. In fact, Plaintiff came to learn that he was functionally being replaced by someone who was already obtained right before he was notified of termination.

26. Defendants have unequivocally violated the FLSA by failing to properly pay overtime to Plaintiff, an obviously non-exempt employee under the guise of his title "Kitchen Manager." Notably, Plaintiff was not paid overtime in the prior years as well wherein he was not even labeled "Kitchen Manager."

27. Plaintiff's termination from employment was transparently retaliatory for Plaintiff's concerns of unpaid overtime compensation, as further reflected in Defendants failing to abide by a mandatory 60-day notice provision in the written terms and conditions of Plaintiff's employment.

### Count I
### Violations of the Fair Labor Standards Act ("FLSA")
### (Wrongful Discharge)
### - Against All Defendants -

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. Plaintiff was terminated from Defendants for expressing concerns of unpaid overtime compensation.

30. Defendants SL and TW are personally liable because they orchestrated the retaliatory termination of Plaintiff because of his protected activities.[6]

31. Plaintiff's discharge from Defendants for engaging in protected activity under the FLSA constitutes unlawful retaliation under the FLSA. *See e.g. Lambert v. Ackerley*, 180 F.3d 997, 1003-05 (9th Cir.1999)(*en banc*); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44-45 (1st Cir.1999); *EEOC v. Romeo Comty. Sch.*, 976 F.2d 985, 989-90 (6th Cir.1992); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir.1989); *Brock v. Richardson*, 812 F.2d 121, 123-25 (3d Cir.1987); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir.1975).

## Count II
### Violations of the Fair Labor Standards Act ("FLSA")
(Failure to Pay Overtime Compensation
- Against All Defendants -

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. Defendants did not pay Plaintiff at a rate of time and one half for hours he worked beyond 40 hours per week. In a 3-year lookback period, Plaintiff is owed well over 1,500 hours of overtime compensation.

34. Liquidated damages should "automatically" be awarded doubling Plaintiff's unpaid overtime compensation.[7]

---

[6] "[A]n individual is subject to FLSA liability when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *White v. Eberle & Bci Servs.*, 2013 U.S. Dist. LEXIS 7542 (D.N.J. 2013); *see also Narodetsky v. Cardone Indus., Inc.*, 2010 U.S. Dist. LEXIS 16133, 2010 WL 678288 (E.D. Pa. 2010)(management may be individually liable under the FLSA for involvement in payroll and/or terminations from employment).

35. Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid overtime compensation, as well as penalties and interest.

### Count III
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
(Failure to Pay Overtime Compensation)
- Against All Defendants -

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Defendants' failure to pay overtime in the aforesaid manner(s) also constitutes a violation of the PMWA.

### Count IV
### Violations of the Pennsylvania Wage Collection Law(s)
(Failure to Pay Overtime Compensation)
- Against All Defendants -

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[7] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc.*, 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm**, single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County*, 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

39. Plaintiff was presented with an agreement wherein he or Defendants were required to give one another 60 days of notice prior to ending the employment of Plaintiff. Plaintiff was not given this notice.

40. Plaintiff is thus owed promised wages for which he relied upon in the amount of 2 months of damages under the Pennsylvania Wage and Collection Law(s).

## Count V
## **Breach of Contract**
### (Failure to Pay Overtime Compensation)

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff was presented with an agreement wherein he or Defendants were required to give one another 60 days of notice prior to ending the employment of Plaintiff. Plaintiff was not given this notice.

43. Plaintiff is thus owed promised wages for which he relied upon in the amount of 2 months of damages for Defendants' breach of contract (as the document Plaintiff was providing assuring notice specifically identified itself as an "Agreement" concerning Plaintiff's compensation).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting overtime violations and retaliation;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, emotional distress, and humiliation caused by Defendants' actions;

D. Plaintiff is to be awarded liquidated or punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G. Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Ari R. Karpf, Esquire
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: February 13, 2020